ARTHUR MCCLAY SMITH *et al.*

*v.*

LORINDA D. SMITH.

EVIDENCE—*to show money loaned does not belong to payee in note.* The fact that a note and mortgage are made payable to an unmarried woman, and which ante-dated her marriage, is, of itself, strong evidence that the legal and equitable title to the money secured by them is in her, and it requires clear and convincing evidence to overcome the presumption, and show that the money is that of her husband's children by a former marriage.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

Mr. H. W. WELLS, for the plaintiffs in error.

Mr. J. K. COOPER, and Mr. D. MCCULLOCH, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Defendant in error filed her bill to foreclose a mortgage on real estate in the city of Peoria, in the circuit court of that county. She claims that the mortgage was made by John H. Morse and wife to her, by the name of Lorinda Magill, before her marriage. She claims that Morse and wife were indebted to her in the sum of $700, and to secure its payment they executed the mortgage.

Plaintiffs in error answered, and also filed a cross-bill, alleging that they are the children and only heirs at law of John McClay Smith, by a former wife; that some time before her death, their mother received from her father $700, which she placed in the hands of her husband and their father, to be loaned for her; that he loaned it to Morse, and took from him a mortgage to secure its payment, but that instrument was made in his own name; that, after the death of their mother, their father married defendant in error; that he was financially embarrassed, and she induced him to get Morse to make a new

mortgage and note to her, by her former name, Lorinda Magill, for this $700, when he surrendered up the first note and mortgage to Morse; that the latter mortgage was similar to the first in date, amount, time of payment and all other essential particulars, except, in the new mortgage defendant in error was named as payee, instead of Smith, the father of plaintiffs in error.

It is further alleged in the cross-bill, that the only consideration for the former mortgage was the loan of the $700 which belonged to their mother, which came to her from her father, and the only consideration for the mortgage in dispute was the surrender of the first; that when this mortgage was made to defendant in error, she was, and had long previously been, the wife of their father, and it was made in her former name, to cover up and conceal the transfer; that the $700 was sent to the mother of the plaintiffs in error, from her father, by Morse, who was her brother-in-law; that he retained the money, and gave the first mortgage to secure its payment; that defendant in error holds the security as a trustee for plaintiffs in error, and, in equity, the money does and always has belonged to them, and they prayed that it be decreed to them.

The answer to the cross-bill denies that the money belonged to the mother of plaintiffs in error, and insists that it belongs to defendant in error, as alleged in the original bill.

At the May term, 1874, of the circuit court, a hearing was had on the bill, answer, cross-bill, answer thereto, replication and proofs. The court found for defendant in error, and dismissed the cross-bill, and decreed the payment of $913.76 found due on the mortgage, and allowed her $3156.34 for money paid by her to redeem a portion of the premises included in her mortgage, from a prior mortgage, and that she have a first lien on the lot thus redeemed, and ordered that, if the sums thus found due were not paid in twenty days, the mortgaged premises be sold, and the proceeds of the sale of the lot thus redeemed by her be first applied to pay the

redemption money thus advanced, and any surplus be applied in payment of the sum found due on her mortgage.

Whilst the evidence in this case is inharmonious, and, to some extent, contradictory, still, we regard it sufficient to, and it does, establish the facts found in the decree, and that they require the granting of the relief sought in the bill. In the first place, the note and mortgage are made to defendant in error. This, of itself, is very strong evidence that the legal and equitable title to the money secured by them is in her. It is so strong as to require clear and convincing evidence to overcome the presumption. Again, it would be unnatural, as we conceive, for a father to despoil his children of their money, and give it to another, even his second wife. To have done so, would have been a fraud on their rights, that no man of average honesty could, ordinarily, be induced to perpetrate. Defendant in error swears, in the most unequivocal terms, to the ownership of the money, and the sources from whence it came, and the amount received from each, and she is corroborated by other testimony in the case.

That Smith had the money of defendant in error, to loan, before he married her, we think is clearly established. This appears from her own testimony, from Smith's books and from the memorandum he made, which was considered and taken into account when defendant in error settled with her daughter, previous to her marriage. The claim against Morse, secured by the first mortgage, was reported by Smith in that memorandum, and fell to defendant in error on that settlement, and the evidence shows that Morse paid interest to her on the claim, through Smith; and she testifies that Morse recognized the debt as due to her, by promising her to pay interest on it to Smith, which he did, and also sent her interest on the note, by his son, in May, 1871; but Morse denies that she asked him for the interest, or that he ever sent her money by his son. We think the evidence clearly shows that Smith had this and other money in his hands belonging to her before they were married, and she swears it was never

8—87 ILL.

paid to her by him, and Morse swears he had her money. This, with Smith's admissions, unopposed by other evidence, would leave no doubt that the money belonged to her, and that she has a right to have it from the sale of the mortgaged premises.

Then, does the evidence introduced in support of the cross-bill overcome the case defendant in error has thus made? It is true that Morse testifies that the money for which this note and mortgage were given was sent by the grandfather of plaintiffs in error, by him, to their mother, in 1865, as a gift to her. The evidence is clear and uncontradicted that this money came in the same manner, to Peoria, for Mrs. Smith and Mrs. Morse, in a certificate of deposit in a Boston bank for $1500, and passed through the First National Bank of Peoria, and on the 9th day of March, 1864, Morse received a credit therefor of $753, and Smith received a like credit for $750; and the evidence shows that Smith checked this, with other moneys, from the bank, at different times. Morse, it is true, testifies that, in some way, he paid to or for Mrs. Smith all the sum over $700, and retained the balance, for which he gave the note and mortgage; but the bank transactions clearly show that Morse did not receive the money at that time, but that Smith certainly did; nor does Morse say when Smith returned the money to him, if he returned it at all. Morse, in regard to this transaction, says his recollection is indistinct, as a long time had elapsed, and, from his manner of testifying, we think he was liable to mistake; and his recollection of the source from whence the money came is variant from that of Childs, his brother-in-law. The latter says that it was received from the sale of a lot of ground devised by the aunt of Morse's wife, Mrs. Smith and others, to them, and which they conveyed to the purchasers, sending the deed for the purpose to their father, who received the money therefor, for them; but Morse's recollection is, that it was a donation from their father to them.

Morse's memory seems to be so indistinct that we can not

hold that it overcomes the evidence on the part of defendant in error; nor do we think it materially aided, as to this mortgage, by that of Childs. We think the other evidence in the case shows they are mistaken in several material facts, and that they are most probably so in others. Whilst Morse swears he paid the Magill note, we fail to find any evidence as to the time or manner, except that the note and mortgage were canceled; and we think the evidence shows they were only satisfied by substituting these in controversy.

Again, we would not expect Morse, the uncle of plaintiffs in error, to have joined with their father in defrauding them of their money, by executing the mortgage to Mrs. Smith, when he and Smith must have known, as business men, that the proper course would have been, if it was their money, to have executed the note and mortgage directly to plaintiffs in error. If Smith was, as is claimed, at the time embarrassed, this would, if the money belonged to plaintiffs in error, have placed it beyond the reach of his creditors, and secured his children in their rights, whilst a mortgage to his wife would be placing it in jeopardy.

After a careful consideration of the testimony, we are of opinion it required the decree that was rendered, and it must be affirmed.

*Decree affirmed.*